# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

|  |  |  |
|---|---|---|
| KEVIN J. MAMON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:14-cv-00428-TWP-DML |
| | ) | |
| ANDY  CRAIG, VICKI  MOORE, | ) | |
| MICHAEL  SHEPHERD, HANCOCK | ) | |
| COUNTY SHERIFF'S DEPARTMENT, | ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY DISCUSSING CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on the parties' cross-motions for summary judgment. Plaintiff Kevin J. Mamon, an inmate at the Indiana State Prison, filed this civil action on March 5, 2014. In this lawsuit, Mr. Mamon claims that defendants failed to protect him from attack by other inmates on July 23, 2012, while he was a pretrial detainee in the Hancock County Jail. This claim is brought pursuant to 42 U.S.C. § 1983. Mamon alleges additional violations of state law based on other physical altercations with other inmates which occurred on October 21, 2012, and November 19, 2012. The defendants, Jail Commander Andy Craig, Jail Officer Vicki Moore, Sheriff Michael Shepherd, and the Hancock County Sheriff's Department seek resolution of the federal claims through summary judgment and ask that the state law claims be denied or remanded to state court.

For the reasons explained in this Entry, the Defendants' Motion for Summary Judgment (Dkt. 23) is **GRANTED** as to the federal claims and Mr. Mamon's Motion for Summary Judgment (Dkt. 40) is **DENIED**. The state law claims are **REMANDED**.

## I.  BACKGROUND

The following facts are pertinent to the pending motions.[1]

Andy Craig is the jail commander of the Hancock County Jail, a position he held under Sheriff Michael Shepherd throughout 2012.

Vicki Moore is a jail officer employed by the Sheriff of Hancock County, Indiana, a position she held in 2012.

**July 23, 2012, Incident**

Mamon was attacked at the Hancock County Jail on July 23, 2012, by Nick Paduoni, Benjamin Wright, and Michael Williams. Mamon suffered injuries as a result of the attack. The attack occurred while Mamon was on lockdown in administrative segregation. Mamon was placed in administrative segregation because of his general aggressiveness in initiating fights with other inmates. When Mamon was placed in administrative segregation he was physically separated from other inmates.

When Craig learned of the altercation on July 23, 2012, between Mamon and three inmates, Paduoni, Wright, and Williams, he was told that Mamon had been accidentally let into the shower by Correctional Sgt. Jordon Conley at a time when those three inmates were also allowed to be there. The normal practice in administrative segregation was to let inmates into the shower cell one at a time. Mamon agrees that the situation began when Sgt. Conley let him out at the same

---

[1] The plaintiff concedes that the facts set forth in the defendants' motion for summary judgment are true but denies that these facts support a judgment in defendants' favor.

time as Williams, Paduoni and Wright. After the altercation, Sgt. Conley told Craig and shift supervisor Vicki Moore that he was not aware of any specific instructions regarding keeping Mamon and Williams separate but admitted he allowed Mamon access to the shower at that time.

Craig viewed video footage of the altercation of July 23, 2012; it shows that the fight was initiated by Paduoni attacking Mamon. The video footage shows that after the inmates had taken showers, and Mamon's cell door was still open, Nick Paduoni entered Mamon's cell where the initial fight took place; Mamon emerged a short time later and then went into Paduoni's cell and continued the fight. All of this time, Williams and inmate Wright simply watched, and did not participate in the fight. Then the video shows that Williams attacked Mamon, and afterwards Mamon threw coffee at Wright and then started fighting with him, at which time jail officers entered the cell block and stopped the fight.

Mamon's testimony is consistent with this scenario, that Paduoni came in his cell and started the fight and that he then went into Paduoni's cell and tried to hit him and then Williams attacked Mamon. However, Mamon states that it was actually Michael Williams who he was throwing the coffee at and not Benjamin Wright.

The supervisor on the shift when the fight occurred on July 23, 2012, was Jail Officer Vicki Moore. She investigated the fight. Moore learned that Sgt. Conley had failed to make himself aware of dry erase board instructions on the cell block door, that Michael Williams and Kevin Mamon should have no contact. Moore confirmed that this instruction had been on the dry erase board outside of H block. As a result of this investigation, Sgt. Conley was reprimanded for allowing Mamon and Williams to have access to each other, contrary to Craig's posted instructions.

**Prior to July 23, 2012**

Sometime prior to July 23, 2012, Craig had been told that Mamon attempted to solicit homosexual sex from other unnamed inmates on one or two occasions. He heard this in a general manner from a jail officer, but he did not hear that there was any particular inmate Mamon was soliciting. Craig never heard, prior to July 23, 2012, or at any time, that Mamon was himself the subject of sexual solicitation or that Mamon was the subject of any form of sexual harassment by any other inmates. Craig had heard that other inmates did not like Mamon but Craig never heard that Mamon was threatened by any other inmates, because he was effeminate, gay or homosexual or for any other reason. Mamon denies that he solicited or participated in sexual activity, although he admits that he was accused of being sexual. Instead, Mamon states that he was presented with sexual proposals which he rejected. Dkt. 49-1.

Craig had also heard, prior to July 23, 2012, that Mamon had other sorts of behavior issues, such as starting fights. Craig is not sure what the subjects of those fights were. Craig never heard that any other inmate had attacked Mamon. All incidents Craig had heard involved Mamon initiating an argument of some kind, or soliciting sex. What little Craig heard on the subject of Mamon's solicitations was second hand.

About a month prior to July 23, 2012, Craig had a conversation with Mamon about where he wanted to be housed in the jail. Craig told Mamon that there were problems concerning his behavior, and there was no block he could be placed in without such problems unless he behaved. Mamon's main problem, in Craig's opinion, is that he was aggressive and combative. During this conversation, Craig does not recall Mamon specifically talking about inmate Michael Williams, and Craig never heard from Mamon or anyone else that a fight between Mamon and Williams was imminent, or that Mamon had been threatened by Williams. Craig had no knowledge, prior to the

incident, from any source, that either Paduoni or Benjamin Wright were friends or allies of Michael Williams, concerning disputes between Williams and Kevin Mamon.

Mamon's testimony regarding his conversation with Craig is that he told Craig he did not "feel safe" in G block and that he was not getting along with inmate Williams who was taunting and threatening to get him. Mamon stated that their issues were escalating, so he wanted to be somewhere else because their interactions might turn into a fight. However, Mamon admits he did not tell Craig that he expected to be attacked, rather he suggested a potential escalation because of Williams' "indirect" comments. Based on this conversation, Craig did not order Mamon to be relocated to another block.

Regularly kept records of the Hancock County Jail, however, show that Mamon was moved to various blocks in the jail after his conversation with Craig. After Mamon was in F block, he was moved into C block, and then on July 20, 2012, he was moved into H block by Jail Officer Justin Owens. H block is for higher security inmates and Mamon was held there on administrative segregation, so that he would be locked down at all times without contact with any other inmates. Mamon termed this arrangement protective custody. If Mamon needed to use the bathroom or shower, he could do so alone upon request.

Jail records reflect that at the time Justin Owens moved Mamon into H block, Michael Williams was still in F block. Mamon agrees that Williams was not in H block when he was first placed there. Regularly kept records of the Hancock County Jail show that on July 21, 2012, inmate Michael Williams was moved into H block from F block by Jail Officer Keith Oliver. Mamon states that when Keith Oliver placed Williams in the cell right next to him, he did not feel threatened because he was locked down in that cell block.

Craig would not have been routinely informed of this move. He did learn, however, that Williams and Mamon were both in H block at some time prior to the altercation between those inmates on July 23, 2012. Craig accordingly gave instructions to write on a dry erase board next to the door of that cell block that these two inmates, Mamon and Williams, should be kept apart. Such dry erase boards are prominently displayed next to the cell door at eye level, so that all jail officers on duty will see them. The dry erase board is right at the entrance to Mamon's cellblock. It is a white board about the size of an 8½ x 11 page, and is clearly posted at shoulder height just to the left of the door. It was there on July 23, 2012, and it was impossible for a jail officer to enter the cell block without seeing it. In Craig's view, it could not be placed more prominently. That door was the only entrance to the cell block.



The instructions on the dry erase board were only for jail officers. All jail staff had been instructed and trained to daily observe, and to heed messages on the dry erase board, as all such messages pertained to present needs and status of inmates, and most often to issues of inmate protection. Craig's instructions on the dry erase board were meant to prevent contact between Williams and Mamon in the shower or in any other way.

Prior to July 23, 2012, Craig never had knowledge from any source that either inmates Nick Paduoni, nor Benjamin Wright, had threatened Mamon, or that Mamon was afraid of them and needed to be separated from them for any reason including impending violence. Nor did Mamon ever, verbally or in writing, inform Craig of any potential dangers from Paduoni and Wright. Mamon states he had no incidents nor verbal confrontations with either Paduoni or Wright before July 23, and his only assailant of that date who he thought he had an issue with before the fight was Williams. Mamon also admits he had had no more talks with Andy Craig beyond his initial talk (about a month prior to July 23, 2012). He did not talk to Craig again after Williams was brought into H block because he thought he would be safe there because of the lock down, and thought he would be by himself when showering.

Regarding the July 23, 2012, altercation, Mamon states that prior to this incident, he did not mention Williams, Paduoni or Wright to Vicki Moore, nor to her knowledge did he mention Williams, Paduoni or Wright to any other jail officer. Moore had no foreknowledge from any source whatsoever of any animosity or impending violence between Mamon and his attackers. Similarly, Mamon never communicated with Sheriff Michael Shepherd that he might be attacked by any inmate.

## II. <u>STANDARD OF REVIEW</u>

"Summary judgment is appropriate where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005) (*quoting* Rule 56(c) of the *Federal Rules of Civil Procedure*). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims, not the weight or credibility of that evidence, both of which are assessments reserved for the trier of fact. *See Schacht v. Wis. Dep't of Corrections,* 175 F.3d 497, 504 (7th Cir. 1999). Indeed, the existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact. *R.J. Codman Derailment Serv., Inc. v. Int'l Union of Operating Eng. 's.,* 335 F.3d 643, 647 (7th Cir. 2003). Rather, the process of taking the facts in the light most favorable to the nonmoving, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *Oregon v. Arbitration Forums, Ins.*, 246 F.3d 975, 983 (7th Cir. 2001) (*quoting Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

Before applying the standard set forth above to the claims in this case, it is appropriate to address the scope of the evidence considered. Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the

record, including depositions, documents, or affidavits. Fed. R. Civ. Proc. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. Proc. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. Proc. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Proc. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. Proc. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them." *Johnson v. Cambridge Indus.,* 325 F.3d 892, 898 (7th Cir. 2003). Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment. *Id.* at 901.

### III. <u>DISCUSSION</u>

The defendants argue that they are entitled to summary judgment because there is no evidence that any of the defendants were deliberately indifferent to Mamon's security by failing to protect Mamon from other inmates in the Hancock County Jail. Mamon also seeks summary judgment in his favor.

#### A. Fourteenth Amendment Failure to Protect Claim

A prison official is liable for failing to protect an inmate from another prisoner only if the official "knows of and disregards an excessive risk to inmate health or safety[.]" *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). A claim that a prison official was deliberately indifferent to

such a risk has both an objective and a subjective component. *Id.* at 834. First, the harm to which the prisoner was exposed must be an objectively serious one. *See, e.g., Brown v. Budz,* 398 F.3d 904, 910 (7th Cir. 2005) ("a beating suffered at the hands of a follow detainee ... clearly constitutes serious harm"). Second, the subjective prong of the deliberate indifference claim, requires that the official must have actual, and not merely constructive, knowledge of the risk in order to be held liable; specifically, he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer,* 511 U.S. at 837. Although this inquiry focuses on an official's subjective knowledge, a prisoner need not present direct evidence of the official's state of mind: "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence ...." *Id.* at 842. In failure to protect cases, a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety. *Gevas v. McLaughlin*, No. 13-1057, 2015 WL 4939605, at *4 (7th Cir. Aug. 20, 2015) (citing cases). "Complaints that convey only a generalized, vague, or stale concern about one's safety typically will not support an inference that a prison official had actual knowledge that the prisoner was in danger." *Id.* (*citing Dale v. Poston,* 548 F.3d 563, 569 (7th Cir. 2008) ("[The prisoner's] vague statement that inmates were 'pressuring' him and 'asking questions' were simply inadequate to alert the officers to the fact that there was a true threat at play.")); *Klebanowski v. Sheahan,* 540 F.3d 633, 639–40 (7th Cir. 2008) (beyond expressing fear for his life, prisoner's statements to guards did not identify who was threatening him or what the threats were); *Grieveson v. Anderson,* 538 F.3d 763, 776 (7th Cir. 2008) (prisoner did not mention to guards that he was perceived to be a "snitch" or otherwise apprise them of a specific threat to his life); *Butera v. Cottey,* 285 F.3d 601, 606 (7th Cir. 2002) (prisoner only stated

vaguely that he was "having problems" in his cellblock and "needed to be removed"). Nor will complaints that are contradicted by the prisoner himself suffice to establish knowledge. *See, e.g., Riccardo v. Rausch,* 375 F.3d 521, 527 (7th Cir.2004) (prisoner initially expressed mortal fear of harm at hands of cellmate, but subsequently indicated to guard he had no concern).

### B. Defendants' Motion for Summary Judgment is GRANTED.

For the reasons explained below, the defendants are entitled to judgment as a matter of law on all of the federal claims alleged against them and their motion for summary judgment [dkt. 23] is **granted on this basis.**

1.      *Deliberate Indifference Claims against All Individual Defendants*

The record establishes that none of the defendants had notice or advance warning of a physical attack upon Mamon by anyone. Mamon did not identify a specific, credible, and imminent risk of serious harm nor did he identify the prospective assailants prior to the attack. Jail Commander Craig did receive a vague report that antagonism with Williams might escalate, but Mamon admittedly did not signal an imminent attack. In any event, when Craig learned that Mamon and Williams were housed in H Block at the same time, he instructed jail staff through a notice written on a dry erase board outside the cell block to keep them separated. In addition the attack was initiated by Paduoni– who no one (including Mamon) had any notice was a threat to Mamon.

Mamon never even talked to Jail Officer Vicki Moore about Michael Williams and his friends. Because there was no specific notice of any ensuing attack upon Mamon and Jail Commander Craig acted reasonably by putting up a warning to keep Mamon separated from Williams, which another jail officer failed to enforce, the defendants are not personally liable for failing to protect Mamon and they are entitled to judgment as a matter of law.

At most, the defendants were negligent in their duty to protect Mamon from harm. For example, Mamon argues that Craig's instructions on the door were "deficient" and "failed" to insure plaintiff's safety. Unfortunately for Mamon, however, negligence does not constitute a cause of action under Section 1983. *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986)("Respondents' lack of due care in this case led to serious injury, but that lack of care simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent.").

### 2. *Claims Against Sheriff Michael Shepherd and the Hancock County Sheriff's Department*

The Sheriff and the Hancock County Sheriff's Department (collectively the "Sheriff's Department") are both entitled to judgment as a matter of law. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom ... inflicts the injury that the government is responsible under § 1983." *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 694 (1978). Therefore, the Sheriff's Department, can only be held liable for a constitutional violation under § 1983 if Mamon can demonstrate:

> (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Teesdale v. City of Chicago,* 690 F.3d 829, 834 (7th Cir. 2012) (quoting *Estate of Sims v. Cnty. of Bureau,* 506 F.3d 509, 515 (7th Cir. 2007)). A plaintiff must demonstrate a causal connection between the policy or practice and his injury. *Rice ex rel. Rice v. Corr. Med. Servs.,* 675 F.3d 650, 674-75 (7th Cir. 2012).

Mamon argues that the Sheriff's Department is liable to him because it's policies were "inadequate" to protect inmates. But, there is no evidence that any Sheriff's Department policy was the moving force behind the alleged violation of Mamon's constitutional rights. Specifically, Mamon argues that allowing high risk inmates such as himself to mingle "in maximum security 'lockdown' confinement clearly shows utter and blatant disregard for safety concerns and is quite contrary to the spirit of 'protective custody' confinement." Dkt. 30 at p. 3. But there is no evidence to suggest that allowing inmates on lockdown to mingle was a policy of the Sheriff's Department. To the contrary, the evidence reflects that Mamon should have been locked in his cell or released by himself to use the restroom facilities. Mamon himself states that only one prisoner was supposed to be out of their cell at a time and that the jail officers controlled the cell doors. Dkt. 40 at p. 3. In other words, it was not the Sheriff's policies that failed in this case; it was the actions of an individual Jail Officer, Sgt. Conley. In addition, placing inmates who are "mentally ill, escape prone, assaultive or violent," undergoing disciplinary investigation "or likely to need protection from other inmates or themselves" in the same administrative segregation unit is not unconstitutional where those inmates are each physically separated from each other. *See* dkt. 40-5 (operations directive regarding administrative segregation).

Similarly, Mamon has failed to present any evidence to support his claim of inadequate training. The Supreme Court in *City of Canton v. Harris*, 489 U.S. 378 (1989) held that claims of entity liability under section 1983 based on inadequate training "can only yield liability against a municipality where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *Id.* 489 U.S. at 389. The entity's policymaker (here, the Sheriff) has to be deliberately indifferent to a pattern of constitutional violations which resulted from inadequate training of jail officers. *Hirsch v. Burke*, 40 F.3d 900, 904 (7th Cir. 1994). Mamon has not

presented any evidence that would suggest that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights" that the Sheriff's Department could reasonably be said to have been deliberately indifferent to the need. *See City of Canton,* 489 U.S. at 390; *Ross v. Town of Austin*, 343 F.3d 915, 918 (7th Cir. 2003). Further there is no evidence of a pattern of similar incidents (inmate assaults while on administrative segregation) which may tend to show that the lack of proper training, rather than a one-time negligent action of the officer involved in a particular incident, is the "moving force" behind the plaintiff's injury. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407-408 (1997); *Hirsch*, 40 F.3d at 904 ("before a municipality may be held liable under a 'failure to train' theory, it must first be established that the defendants were on notice of constitutional violations committed by their inadequately trained employees."). The single incident of violence against Mamon while in administrative segregation is insufficient to show the notice and continued adherence to a flawed training program that is required for municipal liability.

Under these circumstances, the Sheriff's Department is entitled to judgment as a matter of law on all of the federal claims.

### 3.   *Qualified Immunity*

Finally, the parties also argue about whether the defendants are entitled to qualified immunity. These arguments are unnecessary, however, because there was no constitutional violation. Since there was no constitutional violation, a qualified immunity defense is irrelevant. *Mucha v. Vill. of Oak Brook*, 650 F.3d 1053, 1057–58 (7th Cir. 2011).

### C. Mamon's motion for summary judgment is denied.

Mamon has not established that the defendants had reason to believe that he would be attacked and the undisputed record reflects that they acted reasonably to protect him because he

was placed in administrative segregation where he was to be physically separated from other inmates at all times. In addition, the custody staff was specifically notified on a dry erase board on the cell block's door to keep Mamon separated from Williams. The attackers were only able to interact with Mamon when Sgt. Conley allowed all of them out of their cells at the same time. Sgt. Conley's decision conflicts with both the instructions provided on the dry erase board and with the Operations Directive on Administrative Segregation. Dkt. 40-5. Under these circumstances, the defendants cannot be liable for Sgt. Conley's actions regardless of whether he acted negligently or with deliberate indifference to Mamon's safety. *Burks v. Raemisch,* 555 F.3d 592, 593-94 (7th Cir. 2009)("Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise. . . ."). Accordingly, Mamon's motion for summary judgment [dkt. 40] is **denied.**

### D. State Law Claims

When federal law claims are dismissed before trial, the district court should decide whether to maintain or relinquish its supplemental jurisdiction over state law claims. Relevant factors to inform the decision are judicial economy, convenience, fairness, and comity. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343 (1988); *Lalowski v. City of Des Plaines*, 789 F.3d 784, 794 (7th Cir. 2015). Ordinarily, the court should relinquish jurisdiction when the federal claims are disposed of before trial. *Sharp Elecs. Corp. v. Metropolitan Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009). There is no reason not to apply the ordinary rule here. This court has not expended any effort on Mamon's state law claims or the defendants' defense of those claims. These claims can be efficiently adjudicated in state court before a state court tribunal, just as the plaintiff desired at the commencement of this litigation (the defendants removed the complaint to this court.). *See RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.,* 672 F.3d 476, 479–80 (7th Cir. 2012) (discussing the

presumption in favor of relinquishing supplemental jurisdiction when no federal claims remain); *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.,* 599 F.3d 720, 727 (7th Cir. 2010) (same). Accordingly, **the state law claims are dismissed without prejudice and remanded to the Madison Circuit Court**. *See Harvey v. Town of Merrillville,* 649 F.3d 526, 532–33 (7th Cir. 2011) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.")(internal quotation omitted).

## IV.  CONCLUSION

It has been explained that "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton,* 118 S. Ct. 1584, 1598 (1998). This is a vital role in the management of court dockets, in the delivery of justice to individual litigants, and in meeting society's expectations that a system of justice operate effectively. Indeed, "it is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases, summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir. 1983).

Mr. Mamon has not identified a genuine issue of material fact as to his claims in this case, and the Defendants are entitled to judgment as a matter of law.  Therefore, Mamon's Motion for Summary Judgment (Dkt. 40) is **DENIED** and Defendants' Motion for Summary Judgment (Dkt. 23) is **GRANTED** as to the Federal Claims. The State Law claims are dismissed without prejudice and are **REMANDED** to the Madison Circuit Court for resolution.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date:  9/8/2015

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

KEVIN J. MAMON
DOC 190764
INDIANA STATE PRISON
Inmate Mail/Parcels
One Park Row
MICHIGAN CITY, IN 46360

All Electronically Registered Counsel